# MAASS *v.* WARDMAN.

### EXCHANGE OF LANDS; VACATION.

An exchange of lands will not be set aside on the complaint of one party thereto, that the other party secretly paid the former's agent a commission, where it appears by the uncontradicted testimony of the second party's agent that, on the refusal of the first party to pay his agent any commission, and the prospective failure of the deal, the witness promised the first party's agent, in the presence of the first party, to divide his commission with him, and that the first party seemed very much pleased that he would not have to pay any commission. There is a further reason for denying relief where the complainant refused an offer to re-establish the *statu quo* while it was still possible, and brought suit only after he had lost the property he acquired through foreclosure proceedings, and after the other party had deeded away the property that he got by the exchange.

No. 3064.   Submitted January 10, 1918.   Decided February 4, 1918.

HEARING on an appeal from a decree of the Supreme Court of the District of Columbia, dismissing a bill in equity to set aside an exchange of real estate.                *Affirmed.*

The facts are stated in the opinion.

*Mr. W. Gwynn Gardiner* and *Mr. Blaine Coppinger* for the appellants.

*Mr. Edwin C. Brandenburg, Mr. Clarence A. Brandenburg, Mr. J. Walter Brandenburg,* and *Mr. J. J. Darlington* for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

Appeal from a decree in the supreme court of the District dismissing appellants, Louis Maass, Herbert Maass, Erna Maass, et al., bill to set aside an exchange of the Rochester Apartment House, owned by the appellee Harry Wardman, for a farm owned by the appellants.

The fundamental ground of complaint on the part of appellants is that appellees secretly paid appellants' agent a commission; for, in the circumstances of the case, unless that ground is sustained appellants cannot prevail. In other words, this charge permeates the whole case, and, while there are other incidental charges of bad faith, the evidence either fails to sustain them or they are dependent upon this.

Louis Maass and Herbert Maass, his son, through a Mr. L. D. Passano, conducted for appellants the negotiations culminating in the exchange. Notwithstanding that it was alleged in the bill that appellants had agreed to pay their agent a commission of 5 per cent, both father and son admitted on the witness stand that, before the transaction was consummated, they declined to pay any commission. Mr. John T. Chesley, of the firm of Chesley & Chesley, who represented Mr. Wardman in the transaction, testified that when the Maasses concluded that they would not pay a commission and the failure of the negotiations seemed imminent, the witness said to Mr. Passano, in the presence of the Maasses, that the Chesleys would divide with Passano whatever commission they received, and that "they (the Maasses) both seemed very much pleased that they would not have to pay any commission." This testimony stands uncontradicted in the record, although appellants introduced rebuttal testimony as to other phases of the case. Moreover, it is rea-

sonable and consistent with the admissions of the Maasses themselves.

There is one other item of evidence to which we shall advert. Mr. Wardman testified that during the controversy following the exchange Herbert Maass, who then was acting for appellants, called at his office, and that witness finally said to him: "Mr. Maass, it is very evident you think you did not make a good deal on this trade, I am satisfied that I have not made a good deal. Now, you come right into my private room here. This won't cost you one cent. You give me the deed for the Rochester back and I will give you the deed for your farm back. Any expense connected with this transaction I will pay." Witness testified that Mr. Maass's reply was, "You need a guardian; you had better have somebody to look after you." Two other witnesses corroborated this testimony, and there was no attempt to answer it. While Herbert Maass was on the stand for appellants, he was asked in cross-examination about this incident, and finally answered that he did not know whether or not Mr. Wardman had made such an offer to him. Subsequently, and prior to the filing of this bill, Mr. Wardman sold and conveyed the farm.

It therefore appears that the division of the commission between the agents of the respective parties was with the full knowledge and consent of appellants, and that such division was not inspired by the appellees. In other words, in the circumstances of this case, appellants really were responsible for the arrangement, and certainly are not in a position to take advantage of it. More than that, they declined Mr. Wardman's offer to re-establish the *status quo* when that was possible; and now, after they have lost the apartment house through foreclosure proceedings and the farm has been deeded away, they are asking a court of equity to require Wardman to pay them for the farm.

The decree was so clearly right that we shall not further discuss the voluminous testimony, although we have carefully considered it.

Decree affirmed, with costs.                    *Affirmed.*